IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT L. DEUTSCH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JORDAN NAMEROW, ESQUIRE | : | |
| DAVID NENNER, ESQUIRE AND | : | |
| NENNER & NAMEROW, P.C. | : | NO. 17-4364 |

## MEMORANDUM ORDER

THOMAS J. RUETER  August 7, 2019
United States Magistrate Judge

Presently before the court is defendants' Motion for Summary Judgment ("Mot."; Doc. 77), plaintiff's response in opposition thereto ("Resp."; Doc. 80), and defendants' reply ("Reply"; Doc. 81). For the reasons set forth below, defendants' motion is **DENIED**.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material when "it might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). To defeat summary judgment, the party opposing the motion cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim, Fireman's Ins. Co. v. DuFresne, 676 F.3d 965, 969 (3d Cir. 1982), but must go beyond the pleadings and present specific facts

showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). See also Celotex, 477 U.S. at 322 (same). If, after applying the above standard, "reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact," summary judgment should not be granted. Burkett v. Equitable Life Assurance Soc'y, 2001 WL 283156, at *3 (E.D. Pa. Mar. 20, 2001).

## II. BACKGROUND

The instant case arises from plaintiff, Albert L. Deutsch's ("Deutsch"), sale of his law practice to defendants, David S. Nenner ("Nenner"), Jordan S. Namerow ("Namerow"), and Nenner & Namerow, P.C. Plaintiff alleges that defendants failed to make payments to him in accordance with the October 1, 2011, purchase agreement ("Purchase Agreement" or "Agreement"). Defendants assert that plaintiff's action is barred by the statute of limitations, and, alternatively, that plaintiff himself failed to uphold certain provisions of the Purchase Agreement. The Purchase Agreement provided, inter alia, that plaintiff was to transfer his entire case load and legal practice, in the form of "good will," to defendants for compensation calculated pursuant to the Agreement. (Exh. 1 to Mot. at 10-12.) The Agreement further provided that plaintiff was to "continue to service his case load." Id. at 12.

Defendants thereafter encountered some economic difficulties, and reportedly had difficulty paying plaintiff in accordance with the terms of the Purchase Agreement. Defendants also took issue with plaintiff's alleged failure to uphold certain provisions of the Agreement.

2

The parties attempted to resolve their disputes, but plaintiff filed the instant action in September 2017.

## III.    DEFENDANTS' MOTION

Defendants assert that they are entitled to summary judgment based on the statute of limitations. (Mot. at 2.) In support of their motion, defendants present two alternative arguments. Defendants first allege that "the Purchase Agreement was repudiated in early 2013," and thus the statute of limitations with respect to all claims had expired by the time plaintiff's complaint was filed on September 27, 2017. Id. Alternatively, defendants argue that "the statute of limitations has expired as to all payments allegedly due and owing under the Purchase Agreement prior to September 27, 2013," and that the doctrines of modification, acknowledgment, and the first-in, first-out rule do not apply so as to take the case out of the statute of limitations. Id. at 2-3.

The court addressed defendants' statute of limitations arguments in their prior Motion for Summary Judgment,[1] finding that there existed several genuine issues of material fact precluding summary judgment. Deutsch v. Namerow, 2019 WL 1787594 (E.D. Pa. Apr. 24, 2019). However, the parties have since completed discovery. Defendants contend that the genuine issues of material fact identified by the court in the prior Memorandum Opinion are no longer in dispute. Plaintiffs respond that material issues of fact remain as to any alleged repudiation and/or modification of the agreement, acknowledgment of the debt by defendants,

---

[1] Defendants' prior motion was filed as a Motion for Partial Judgment on the Pleadings (Doc. 48.) Pursuant to Fed. R. Civ. P. 12(d), the court converted the motion to a Motion for Summary Judgment due to the submission of matters outside the pleadings. See Doc. 58.

and allocation of the payments.  See Resp. at 1-10.  The court will address defendants' arguments in turn.

### 1. Repudiation of the Purchase Agreement

Defendants assert that "there is no genuine issue of material fact that the four (4) year statute of limitations on Deutsch's claim for breach of contract[, 42 Pa. Cons. Stat. Ann. § 5525], and the two (2) year statute of limitations on Deutsch's claim for conversion[, 42 Pa. Cons. Stat. Ann. § 5524(3)], were triggered by the repudiation of the Purchase Agreement on March 15, 2013, such that the statutes of limitation as to all claims expired prior to the September 2017 filing of the within lawsuit." (Mot. at 15.)  Defendants' argument is based upon two emails sent from defendant Nenner to plaintiff, the first of which was sent in January 2013:

> Also I really need for you to keep your part of our bargain.  You have settled one or two small cases in the last year.  Both cases were settled this past summer when you were in Phila.  Recently I had to borrow more money just to make payroll.  We are operating in the red and that must change soon.  If you have lost interest in working files then I would respectfully suggest that you consider adjusting your percentage downward.

(Exh. 5 to Mot. at 2.)  The second email was sent in March 2013, and reads as follows:

> I just sent you 5000 dollars.  I can't keep paying overhead out of my own pocket.  I am doing the best I can trying to keep my head above water.  I haven't made a dime from this venture.  All monies have gone to overhead and you.  If you need more money then work harder.  If you want the practice back then say so.  I haven't put one penny in my pocket from your cases and have incurred substantial debt to keep it a float.

(Exh. 6 to Mot. at 1.)  Defendants characterize these two emails as an "ultimatum" evidencing repudiation of the parties' Purchase Agreement.  (Mot. at 7.)  Plaintiff responds that the emails do not demonstrate a repudiation of the parties' Purchase Agreement, but rather a modification of the Agreement.  (Resp. at 5.)

4

Under Pennsylvania law, repudiation of a contract requires "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." Andrews v. Cross Atl. Capital Partners, Inc., 158 A.3d 123, 130 (Pa. Super. Ct. 2017). See also Edwards v. Wyatt, 335 F.3d 261, 272 (3d Cir. 2003) (observing that the Pennsylvania Supreme Court has "reject[ed] any argument suggesting a dilution of our long recognized standard of an 'absolute and unequivocal refusal to perform.'" (quoting 2401 Pennsylvania Ave. Corp. v. Fed'n of Jewish Agencies, 489 A.2d 733, 737 (Pa. 1985))). Neither email quoted by defendants demonstrates an absolute and unequivocal refusal to perform. As such, viewing the facts in a light most favorable to plaintiff, the non-moving party, the court finds that there is a material issue of fact as to whether the Purchase Agreement was repudiated, and, if so, when the Agreement was repudiated. Summary judgment is not warranted on this issue.

**2. Expiration of Statute of Limitations**

Defendants argue that, even if there was no repudiation of the Purchase Agreement in 2013, the statute of limitations expired as to "any obligation or payment that became due under the Purchase Agreement prior to September 27, 2013, and for any alleged 'conversion' that occurred prior to September 27, 2015." (Mot. at 19.) This argument mirrors the claims raised in defendants' prior Motion for Summary Judgment. Deutsch, 2019 WL 1787594. In adjudicating the prior motion, the court found that defendants failed to establish the absence of any genuine issue of material fact as to the statute of limitations. Id. at *5. Defendant, however, asserts that no genuine issues of material fact presently remain, relying largely on plaintiff's deposition. See Mot. at 22.

For the reasons stated infra, the court finds that there remain genuine issues of material fact as to (1) whether there was a modification of the Agreement between the parties,

5

(2) whether there was any subsequent acknowledgment of the debt by defendants, and (3) the allocation of the payments made by defendants, such that summary judgment is not appropriate on the statute of limitations issue.[2]

### a. Modification

In the prior Memorandum Opinion by the court, the undersigned found that email evidence demonstrated that there was a material issue of fact as to whether there had been a modification to the original Agreement, thereby also impacting the statute of limitations. Deutsch, 2019 WL 1787594 at *4. The court noted that emails submitted along with defendants' reply showed that defendants made reference to adjustments made to the Agreement. See Exh. 1 to Doc. 55 at 2 (stating that "all parties have agreed to waive the apportionment of your work efforts and our tim[e]liness of payments" and discussing "mutual prior adjustments to the contract").

Defendants argue that there is no longer any genuine issue of material fact because plaintiff "testified that there was never any waiver of rights under the Purchase Agreement," and that the only modification was "an oral agreement for the defendants to *try* to pay to Deutsch the back moneys owed under the Purchase Agreement." (Mot. at 22-23 (citing Plaintiff's Deposition, N.T. 4/30/19, at 193, 203, 205, 206, 208).)

In his Response, plaintiff asserts that defendant Nenner's "own testimony wholly undermines their argument that the Agreement had not been modified." (Resp. at 6 (citing defendant Nenner's Deposition, N.T. 5/1/2019, at 82-84).) Plaintiff cites the following exchange between plaintiff's counsel and defendant Nenner from his deposition:

---

[2] The court notes that a finding of a genuine issue of material fact as to any one of these three doctrines is sufficient to preclude summary judgment on the statute of limitations issue.

6

> Q. Would you agree with me that – would you agree with the proposition that [plaintiff] agreed to defer the payment of monies otherwise due under the contract in order to keep the firm going?
>
> * * *
>
> A. I think the answer to that question is that [plaintiff] did agree. Okay? And I also think that [plaintiff] agreed because he knew the reality of the situation . . . . So to answer your question, yes, we adjusted the pay period. We adjusted the amounts that were going to be paid . . . . So by his practices, I gave him that option, I believe in early 2013. I said, take the practice back. And I was dead serious. I said, take the practice back. We've got to do something different and he acquiesced.

(Defendant Nenner's Deposition, N.T. 5/1/2019, at 82-84.) Additionally, as acknowledged by defendants, plaintiff clearly testified that there had been a modification to the terms of the Agreement. See, e.g., Plaintiff's Deposition, N.T. 4/30/19, at 206-07 ("I think that taking all the half dozen e-mails together resulted in a modification . . . . It's my understanding that reading all half dozen e-mails in sequential order resulted in a modification, and the main modification I was after was that he acknowledged that the money was owed and that he would take out a loan if necessary . . . ."), 210 (". . . [Y]es, our agreement was altered as a result of the half a dozen e-mails."), 217-18 (stating that there was a modification of the contract), 221-24 (same).

Accordingly, viewing the evidence in the light most favorable to plaintiff, as the nonmoving party, there are genuine issues of material fact as to whether a modification took place, as well as the terms of any such modification.

### b. Acknowledgment

In the prior Memorandum Opinion, the court further found that there was a genuine issue of material fact as to whether defendants had subsequently acknowledged the debt, which would toll the statute of limitations. Deutsch, 2019 WL 1787594 at *4. Under Pennsylvania law, "a promise to pay a debt may toll the statute of limitations." Gurenlian v.

7

Gurenlian, 595 A.2d 145, 151 (Pa. Super. Ct. 1991) (citation omitted). The Pennsylvania Supreme Court set forth the basis of the "acknowledgment doctrine" as follows:

> A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt, and the acknowledgment must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise. To be consistent with a promise to pay the debt, the acknowledgment must be such as indicates an intention to pay the debt existing at the time of the acknowledgment. The time of payment need not be immediate, but the intention to pay must be present.

Maniatakis' Estate, 101 A. 920, 921 (Pa. 1917). "In order to take the case out of the statute, it is not necessary to show an express promise to pay. A clear, distinct and unequivocal acknowledgment is sufficient; from such an admission the law will infer a promise to pay." Anthracite Tr. Co. v. Loughran, 19 A.2d 61, 62 (Pa. 1941). Pennsylvania courts have stated that "there can be no more clear and unequivocal acknowledgment of a debt than payment." Cole v. Lawrence, 701 A.2d 987, 990 (Pa. Super. Ct. 1997). See also Restatement (Second) of Contracts, § 82 (Am. Law. Inst. 1981) (A promise to pay may be found by "[a] voluntary transfer of money . . . made as interest on or part payment of or collateral security for the antecedent indebtedness.").

Defendants argue that there was no promise here sufficient to meet the "clear, distinct and unequivocal" standard, and that the payments made by defendants did not give rise to an acknowledgment. (Mot. at 26-31.) Plaintiff, citing defendants' depositions, argues that defendants did, in fact, acknowledge that money was owed to plaintiff, and calculated the exact amount in September 2017. (Resp. at 14-15; Exh. 4 to Resp.) Specifically, defendants provided

8

plaintiff with a statement of account in which they represented that the "Balance Owed to [Plaintiff]" was $134,248.11.[3] (Exh. 4 to Resp.) Plaintiff further argues that a payment of $25,000 was made following a demand for this calculated amount in September 2017. (Resp. at 14-15.)

The court notes that, while there is some support for defendants' position in the record, the statement of account supports plaintiff's argument that an acknowledgment occurred. Additionally, plaintiff testified several times that the debt was acknowledged by defendants. See, e.g., Plaintiff's Deposition, N.T. 4/30/19, at 223, 224. Furthermore, in his deposition, defendant Nenner stated, "[in September 2017], we had the money, $25,000 had come in and was available so we paid him. Because we knew we owed him something." (Defendant Nenner's Deposition, N.T. 5/1/2019, at 129.) The March 2014 emails, discussed in the court's

---

[3] Defendants assert that this statement of account is barred under Fed. R. Evid. 408. (Reply at 13.) Specifically, defendants assert that the document comprised a "settlement offer" to "resolve a disputed claim." Id. FRE 408 provides that the following evidence is not admissible either to prove or disprove the validity or amount of a disputed claim:

> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

The court finds that the document is not barred by FRE 408. There is no indication that the document was prepared as an offer to resolve the claim. On the contrary, defendant Nenner testified that the document was created "to solidify an amount of money that [Namerow] believed was owed . . . to see if [Deutsch's] representations were accurate." (Defendant Nenner Deposition, N.T. 5/1/19, at 70-71.)

Additionally, it is of note that the terms of the Purchase Agreement entitle plaintiff the "right to receive full accountings for his 'case load,'" which the Purchase Agreement defines as "all cases in possession of 'Deutsch' as of the date of commencement of this purchase agreement and any and all cases referred to 'Deutsch' thereafter." (Exh. 1 to Mot. at 1, 5.)

9

April Memorandum Opinion, also indicated that defendants were "as eager as [plaintiff] to pay the back balance." (Exh. 1 to Doc. 55 at 2.)

Accordingly, viewing the evidence in the light most favorable to plaintiff, as the nonmoving party, there are genuine issues of material fact as to whether defendants acknowledged the debt, thereby tolling the statute of limitations.

### c. Allocation of Payments

The court's April Memorandum Opinion also found a genuine issue of material fact as to the allocation of the payments made by defendants. (Doc. 69 at 8-9.) The court noted that plaintiff had argued at the evidentiary hearing that any obligations which may be barred by the statute of limitations had already been satisfied. Deutsch, 2019 WL 1787594 at *4. Defendants presently argue that this first-in, first-out rule "does not, and cannot, apply to preclude the application of the statute of limitations in this case where the [d]efendants dispute the debts based upon, inter alia, the statute of limitations." (Mot. at 32.) Under Pennsylvania's first-in, first-out rule, "when a debtor does not indicate to which debt the payment is to be applied, the creditor may apply it in any manner he chooses." RLI Ins. Co. v. Bennett Composites, Inc., et al., 2005 WL 2902496, at *8 (E.D. Pa. Nov. 2, 2005).

In making their argument, defendants point to Pennsylvania case law providing that "a creditor may not apply payments to a disputed or contested debt and thus prevent a debtor from litigating the validity of the debt." (Mot. at 32 (quoting Uhl Const. v. Fid. & Deposit Co. of Md., 538 A.2d 562, 565-66 (Pa. Super. Ct. 1988).) Plaintiff responds that the claims are not disputed and, further, that "the rule precludes a party from using an allocation that prevents the other from litigating an issue." (Resp. at 17-18 (citing Uhl Const., 538 A.2d at 565).)

10

Here, defendants' argument does not support their ground for seeking summary judgment. Simply put, the court does not agree with defendants' interpretation of the cited case law. The debt involved in this case is not "disputed or contested" as contemplated in the state cases addressing this issue. See, e.g., Page v. Wilson, 28 A.2d 706, 710 (Pa. Super. Ct. 1942) (dispute arose where plaintiff argued that he was not liable to pay for lease's renewal term). The court is persuaded by the Court of Common Pleas' decision in Smiler Beverage Co. v. Jennings, 1993 WL 1156064 (C.P. Phila. June 15, 1993), aff'd, 645 A.2d 902 (Table) (Pa. Super. Ct.), allocatur den., 645 A.2d 902 (Table) (Pa. 1994), wherein the defendant made regular merchandise purchases from, as well as regular payments to, the plaintiff. However, "the total payments were insufficient to bring [the defendant's] account current." Id. at *112. The defendants argued that the "plaintiff should not have been entitled to apply payments to the prior invoices and instead, that the plaintiff must apply current payments to current purchases, not previous alleged debts," and that "the four year statute of limitations would prevent recovery on the alleged book account incurred" more than four years prior to the filing of the complaint. Id. at *114. The court found that the plaintiff was within its right to allocate payment to the earliest outstanding debts, and that the defendant's claim that the four-year statute of limitations prevented recovery was "invalid." Id. at 115. Thus, in Smiler, the Court of Common Pleas clearly did not consider the defendant's statute of limitations argument to be a "dispute" as contemplated by the doctrine.[4]

---

[4] This interpretation is further supported by the Restatement (Second) of Contracts § 259 cmt. a, illus. 1 (Am. Law Inst. 1981). Illustration 1 to Comment A states: "A owes B two matured debts, one of which is barred by the statute of limitations. A makes a payment to B without directing its application. B can apply it to the barred debt and the debt is discharged to that extent." Id. Here, plaintiff argues that the payments made by defendants to plaintiff "more than cover[] the claims that came due prior to September 27, 2013." (Resp. at 15.)

11

Moreover, the validity of the debt is not an issue in the instant case. As stated in defendant Nenner's deposition, defendants "knew we owed him something." (N.T. 5/1/2019, at 129.) Additionally, as noted supra, defendants provided plaintiff with a document they believed to represent the remainder of the debt as of 2016. Rather, it is the court's understanding that the dispute at issue here is the amount of the debt, and/or whether the debt was satisfied by payments previously made to plaintiff by defendants.

Additionally, as noted by plaintiff, the doctrine disclaims its application to prevent a party from litigating the validity of a debt. See Page, 28 A.2d at 710 (finding that "[t]here would be no equity in" appropriation in a manner that bars the opposing party from litigating the liability under the debt); Toll-Barkan v. Toll, 164 A.2d 36, 39 (Pa. Super. Ct. 1960) ("[I]t would be inequitable by such [appropriation] to permit one of the parties to gain an undue advantage in their controversy." (quoting Standard Sur. & Cas. Co. of N.Y. v. United States, 154 F.2d 335, 337 (10th Cir. 1946)). To accept defendants' claim that the statute of limitations renders the instant debt "disputed or contested" is to foreclose plaintiff's ability to pursue his claim that he is still owed compensation pursuant to a valid debt.

Given that the court finds there is no "disputed or contested debt" as contemplated in Uhl Const., the court notes that there is an outstanding issue as to whether any allocation was made by either party.[5] Defendants assert that it is "undisputed that when payments were made,

---

In the court's view, defendants' argument based on Uhl Const., see Mot. at 32, is in line with Comment C, Illustration 8, which provides: "A owes B two matured debts of $1,000 each, one of which A has consistently disputed. A pays B $1,000 without directing its application. B notifies A that he has applied it to the disputed claim. B's purported application is ineffective, and the disputed debt is not discharged." Restatement (Second) of Contracts § 259, cmt. c, illus. 8. However, Illustration 8 is inapposite to the facts of this case.

[5] The principles of this doctrine were set forth by the Pennsylvania Supreme Court in Harker v. Conrad, 14 Am. Dec. 691, 1825 WL 1906 (Pa. 1825). Therein, the court provided that "the creditor has a right to appropriate, where the debtor has failed to do so, yet this right

12

they were not attributable to any specific month or period." (Mot. at 30.) If in fact no allocation was made, the application of payments is left to the discretion of the court "in accordance with equitable rules and principles." Page, 28 A.2d at 709. Under Pennsylvania law, however, it is strongly encouraged that the court "deem[] the payments to have been made in discharge of the earliest liabilities of a running account – each item of credit is applied in extinguishment of the earliest debit items in the account." Id. In the alternative, it is encouraged to "apply the payment, when not appropriated by either party, in the way most beneficial to the creditor." Id. See also Woods Trust, 38 A.2d 28, 30 (Pa. 1944) (same); Toll-Barkan, 164 A.2d at 38 (same); Datlof v. United States, 370 F.2d 655, 658 n.3 (3d Cir. 1966) (same). This is an issue to be deferred to trial.

## IV. CONCLUSION

In analyzing the evidence, the court has viewed the facts in the light most favorable to plaintiff, the non-moving party, and has drawn all inferences in plaintiff's favor. Plaintiff has sufficiently "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. Thus, defendants' motion for partial summary judgment must be denied.

For the reasons set forth in this Memorandum, it is hereby **ORDERED** that defendants' Motion is **DENIED**.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

---

must be exercised within, at the furthest, a reasonable time after the payment, and by the performance of some act which indicates an intention to appropriate. It is too late to attempt it at the trial . . . ." Id. at *4. Accordingly, any such allocation by plaintiff must have been made at the time of the payment, or within a reasonable time thereafter.